UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF LOUISIANA
LAFAYETTE DIVISION

| | |
|---|---|
| JACQUELINE NED | CASE NO.  6:20-CV-00248 |
| VERSUS | JUDGE ROBERT R. SUMMERHAYS |
| LAFAYETTE GENERAL HEALTH SYSTEM, INC. | MAGISTRATE JUDGE HANNA |

## MEMORANDUM RULING

The present matter before the Court is a Motion for Summary Judgment filed by Lafayette General Health Systems, Inc.[1] For the reasons explained below, the Motion for Summary Judgment is GRANTED.

## I.
### BACKGROUND

Plaintiff Jacquelyn Ned asserts Title VII employment discrimination claims against defendant Lafayette General Health Systems, Inc. ("LGHS"). Ned, who is African American, alleges that she was subjected to racial harassment and discrimination, and that she was ultimately demoted as an RN Team Leader at St. Martin Hospital as a result of racial bias or animus.[2] St. Martin Hospital is part of the LGHS system of health facilities. Ned was employed as a registered nurse at St. Martin Hospital on September 24, 2012.[3] LGHS promoted Ned to the position of RN Team Leader on October 10, 2017.[4] Ned contends that she received positive performance evaluations after her promotion.[5] The summary judgment record includes Ned's annual evaluation dated December 18, 2018, which appears to show a generally positive assessment of Ned's

---

[1] ECF No. 12.
[2] ECF No. 1 at ¶¶ 32-36.
[3] *Id*. at ¶ 7.
[4] ECF No. 12-1 at 1.
[5] ECF No. 16-5 at ¶¶ 3-5.

1

performance as an RN Team Leader in 2018.[6] The summary judgment record also includes a note to Ned from her supervisor, John Simar, commending her on her performance as an RN Team Leader:

> One of your co-workers shared with me how you are an effective team leader and that you remain calm in difficult situations and guide the staff to do the right thing for our patients. Also, you are instrumental in promoting teamwork. Thank you for your skills and professionalism.[7]

Ned states that she received this note on January 25, 2019.[8] Simar was the Director of Nursing at St. Martin Hospital and served as Ned's direct supervisor starting on September 1, 2018.[9]

The summary judgment record also reflects that Simar held at least three counseling sessions with Ned with respect to her performance as RN Team Leader beginning in February 2019.[10] These counseling sessions addressed complaints against Ned by her co-workers, as well as concerns about Ned's leadership abilities; they also addressed how she handled conflicts and confrontations with her colleagues.[11] Specifically, on February 6, 2019, Ned met with Simar and Kia Butler, a member of LGHS's Human Resources Department. At this meeting, Simar addressed confrontations between Ned and the staff she supervised. Simar's notes of the meeting indicate that, in his view, Ned "personalizes issues which clouds her performance as a Team Leader and creates a negative experience."[12] Simar noted a specific confrontation between Ned and another staff member in which Ned angrily confronted that staff member. Simar observed that Ned "gets upset with someone and does not let it go."[13]

---

[6] ECF No. 16-4 at 1-5. The summary judgment record includes copies of additional reviews, but these reviews appear to cover a period after Ned's demotion.
[7] ECF No. 16-3.
[8] ECF No. 16-5 at ¶4.
[9] ECF No. 12-1 at 1; 12-3 at ¶¶ 2-3.
[10] ECF No. 12-3 at 4-9.
[11] *Id*.
[12] *Id*. at 4.
[13] *Id*. at 5.

On March 12, 2019, Simar met with Ned again to discuss confrontations between Ned and her co-workers. According to Simar's notes, Ned "immediately became defensive and angry."[14] Simar states that during the meeting Ned began to criticize the actions of the staff that she supervised.[15] Simar notes that he did not see Ned as an effective Team Leader and "would like to remove her from this role."[16] On March 19, 2019, Ned was given a formal written warning on her performance as a Team Leader.[17] That written warning stated that Ned was counseled "on a least three (3) occasions regarding her behavior as the RN Team Leader, following multiple complaints regarding communication with staff and lack of conflict resolution."[18]

Ned contends that before these counseling sessions in February and March 2019, she had never received any feedback or warnings about her poor performance as an RN Team Leader. Given her prior history of positive reviews, she contends that Simar was unfairly targeting her on account of her race by labeling her as a poor performer in February and March 2019. Ned states in her declaration that on March 12, 2019, she contacted Kia Butler "to report [Simar] as harassing and targeting me due to my race."[19] Ned also testified that after she received the March 19th written warning, she provided a written "timeline of events" to the Chief Executive Officer of St. Martin Hospital, Karen Wyble.[20] Ned contends that her complaints to Butler and Wyble were "dismissed as petty."[21] Kia Butler acknowledges in her declaration that Ned contacted her in March 2019 and relayed her conversations with Simar. However, Butler states that Ned "never complained of or mentioned that she was being harassed on the basis of her race."[22]

---

[14] *Id*. at 7.
[15] *Id*.
[16] *Id*.
[17] ECF No. 12-3.
[18] *Id*.
[19] ECF No. 16-5 at ¶ 6.
[20] *Id*. at ¶ 7.
[21] *Id*. at ¶ 6.
[22] ECF No. 19-2 at ¶ 7.

Simar, Butler, and Wyble held additional meetings with Ned in June and July of 2019. On July 17, 2019, Wyble and Simar met with Ned. According to Wyble, Ned became angry and defensive and "started pointing her finger at" Wyble. Simar and Wyble requested that Ned "clock-out" for the shift because she had become "angry and accusatory" during the meeting.[23] After this meeting Wyble and Simar requested that LGHS's Human Resources Department remove Ned from her position as RN Team Leader. At one point, Human Resources offered to move Ned to another LGHS facility, but Ned responded that she did not want to relocate.[24] Ned was then placed on administrative leave for three weeks.[25] LGHS ultimately demoted Ned back to the position of Staff RN.[26]

Ned then filed a complaint with the EEOC charging discrimination and harassment on the basis of race.[27] Ned received a "Right to Sue Notice" from the EEOC on November 25, 2019.[28] She filed the present action on February 24, 2020. In her Complaint, Ned asserts claims under Title VII.

## II.
### SUMMARY JUDGMENT STANDARD

Summary judgment is proper if the pleadings, discovery products on file, and affidavits show that there is no genuine dispute as to any material fact and that the movant is entitled to judgment as a matter of law.[29] The purpose of summary judgment is to pierce the pleadings, to assess the proof, and to determine whether there is a genuine need for trial.[30] Summary judgment

---

[23] ECF No. 12-3 at 20.
[24] ECF No. 16-5 at ¶¶ 11-12.
[25] ECF 12-3 at ¶ 13.
[26] ECF No. 12-1 at ¶¶ 10-11.
[27] ECF No. 1 at ¶ 27.
[28] ECF No. 1 at ¶ 27.
[29] Fed. R. Civ. P. 56(a).
[30] *See Matsushita Electric Industries v. Zenith Radio Corp.* 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L.Ed.2d 538 (1986).

procedure is designed to isolate and dispose of factually unsupported claims or defenses.[31] If the movant bears the burden of persuasion at trial on a claim or defense addressed in the motion for summary judgment, the movant must establish that there is no genuine dispute of material fact as to those claims or defenses. To satisfy this burden, the movant must come forward with competent summary judgment evidence conclusively establishing that no reasonable trier of fact could find other than for the moving party.[32] To avoid summary judgment, the non-movant must then come forward with evidence showing that there is a genuine dispute of material fact.

If the non-moving party has the burden of persuasion at trial with respect to an issue addressed in the motion for summary judgment, the moving party may satisfy its initial burden by either (1) demonstrating affirmatively that there is no triable issue of fact as to each element of the non-moving party's affirmative defenses or claims, or (2) "showing" that the non-moving party cannot present evidence sufficient to satisfy the essential elements of its defenses or claims and thus cannot meet its burden of persuasion at trial.[33] If the moving party makes a showing that there is "no evidence" to support the non-moving party's claims or defenses, the non-moving party must come forward with "substantial" evidence showing a genuine dispute of material fact with respect to each essential element of its affirmative defenses or claims.[34] Substantial evidence for purposes of defeating summary judgment is evidence sufficient to support a jury verdict in the non-movant's favor.[35] Under this standard, the non-movant cannot rely on unsupported assertions or arguments but must submit sufficiently probative evidence supporting its claims or defenses. Even if the

---

[31] *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24, 106 S. Ct. 2548, 91 L.Ed.2d 265 (1986).
[32] *See Calderone v. United States*, 799 F.2d 254, 259 (6th Cir.1986).
[33] *Celotex Corp.*, 477 U.S. at 324–326, 106 S. Ct. 2548.
[34] *Id.*
[35] *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249–252, 106 S. Ct. 2505, 91 L.Ed.2d 202 (1986).

burden shifts to the non-moving party, the movant still retains the ultimate burden of persuasion on the motion for summary judgment.[36]

In considering a summary judgment motion, "the court must disregard all evidence favorable to the moving party that the jury is not required to believe and should give credence to the evidence favoring the nonmoving party as well as that evidence supporting the moving party that is uncontradicted and unimpeached."[37] "Credibility determinations are not part of the summary judgment analysis."[38] Rule 56 "mandates the entry of summary judgment . . . against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof."[39]

### III.
### DISCUSSION

#### A.    Title VII Disparate Treatment Claim.

LGHS challenges Ned's disparate treatment claim under Title VII. Title VII of the Civil Rights Act of 1964 makes it "an unlawful employment practice for an employer . . . to discharge any individual . . . because of such individual's race . . . ."[40] An employer's action will be found unlawful if the employee can demonstrate that race was a "motivating factor" for his or her termination, even if the employer was also motivated by other lawful factors.[41] A plaintiff can prove a claim of unlawful discrimination by either direct or circumstantial evidence. Cases built on the latter, such as this one, are analyzed under the framework set forth in *McDonnell Douglas*

---

[36] *Celotex Corp.*, 477 U.S. at 330–331, 106 S. Ct. 2548.
[37] *Roberts v. Cardinal Servs.*, 266 F.3d 368, 373 (5th Cir. 2001); *see also Feist v. Louisiana, Dept. of Justice, Office of the Atty. Gen.*, 730 F.3d 450, 452 (5th Cir. 2013)(court must view all facts and evidence in the light most favorable to the non-moving party).
[38] *Quorum Health Resources, L.L.C. v. Maverick County Hosp. Dist.*, 308 F.3d 451, 458 (5th Cir. 2002).
[39] *Patrick v. Ridge*, 394 F.3d 311, 315 (5th Cir. 2004) (alterations in original) (quoting *Celotex v. Catrett*, 477 U.S. 317, 322 (1986)).
[40] 42 U.S.C. § 2000e–2(a).
[41] *Vaughn v. Woodforest Bank*, 665 F.3d 632, 636 (5th Cir. 2011) (citing 42 U.S.C. § 2000e-2(m)).

*Corp v. Green.*[42] The *McDonnel Douglas* framework requires a plaintiff to first establish a prima facie case of discrimination by showing that: (1) she was a member of a protected class; (2) she was qualified for her position; (3) she was discharged or subject to an adverse employment action by her employer; and (4) she was replaced by someone outside her protected class or was treated less favorably than other similarly situated employees outside of the protected group.[43]

If the plaintiff makes this prima facie showing, the burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for its employment action.[44] The employer's burden is only one of production, not persuasion, and involves no credibility assessment.[45] If the employer meets this burden, the burden shifts back to the plaintiff to either: (1) offer sufficient evidence to create a genuine issue of material fact that the employer's proffered reason is not true, but instead is a pretext for a discriminatory purpose, or (2) demonstrate that the defendant's reason, while true, is only one of the reasons for its conduct, and that the plaintiff's protected status is another "motivating factor" for the employer's actions.[46]

LGHS argues that Ned has not established a prima facia case of race discrimination because she has not shown that she was treated less favorably than other similarly situated employees outside her protected group. Ned points to no evidence that she was replaced as RN Team Leader with someone outside of her protected group. Instead, Ned alleges that she was treated less favorably than a white co-worker, Rebecca LeBas, under similar circumstances. Like Ned, LeBas was an RN Team Leader and, according to Ned, "was rated a low performer" but was "never demoted or suffered any consequences for her performance and behavior."[47] "Disparate treatment

---

[42] 411 U.S. 792 (1973); s*ee e.g. McCoy v. City of Shreveport*, 492 F.3d 551, 556 (5th Cir. 2007).
[43] *Id.*; *Okoye v. University of Texas Houston Health Science Center*, 245 F.3d 507, 512 (5th Cir.2001).
[44] *McCoy* at 557.
[45] *Id.*
[46] *Id.*; *Vaughn* at 636; *Rachid v. Jack in the Box, Inc.*, 376 F.3d 305, 312 (5th Cir. 2004).
[47] ECF No. 16-5 at ¶ 15 ("[LeBas] was never demoted or suffered any consequences for her performance and behavior. She eventually resigned from her position.")

occurs where an employer treats one employee more harshly than other 'similarly situated' employees for 'nearly identical' conduct."[48] "The employment actions being compared will be deemed to have been taken under nearly identical circumstances when the employees being compared held the same job or responsibilities, shared the same supervisor or had their employment status determined by the same person, and have essentially comparable violation histories."[49]

Here, the summary judgment record does not show that LeBas is an appropriate comparator. Simar and Wyble cited Ned for conflicts and disputes with co-workers, poor leadership, and stated that Ned was angry and defensive during her counseling sessions from February through July 2019. In contrast, there is no evidence showing the nature or circumstances of LeBas' alleged performance problems as a Team Leader. Ned's declaration merely refers to LeBas as a "poor performer" with no explanation showing that LeBas' performance problems were similar in nature or magnitude to the problems cited by Simar and Wyble with respect to Ned.[50] The summary judgment record also includes a February 2020 statement—apparently drafted by Ned—alleging that LeBas "received several write-ups and counseling sessions for multiple reasons."[51] But, again, Ned does not identify the nature of LeBas' performance problems. Without this information, Ned cannot show that she was treated less favorably than LeBas under "nearly identical" circumstances.[52] As a result, Ned has not established a prima facia case of discrimination

---

[48] *Vaughn*, 665 F.3d at 637 (citing *Lee v. Kansas City S. Ry. Co.*, 574 F.3d 253, 260 (5th Cir. 2009)); *see also Turner v. Kansas City Southern Ry. Co.*, 675 F.3d 887, 892-93 (5th Cir. 2012) (In work-rule violation cases, a plaintiff can demonstrate disparate treatment by showing that employees outside of his protected class who engaged in similar acts were not punished similarly).
[49] *Lee* at 260 (footnotes omitted).
[50] ECF No. 16-5 at ¶ 15.
[51] ECF No. 16-4 at 20.
[52] Ned's characterization of LeBas' performance history is also problematic because there is no evidence showing a basis for her personal knowledge of LeBas' performance history. The summary judgment record includes the declaration of Desiree Provost—a human resources manager for LGHS—that disputes Ned's characterization of LeBas as a "poor performer." ECF No. 19. Ms. Provost testifies that she reviewed LeBas' personnel file and "[n]o

on the basis of race under Title VII. Accordingly, the Court will grant LGHS's Motion for Summary Judgment with respect to Ned's disparate treatment claim.

### B. Title VII Hostile Work Environment Claim

LGHS next challenges Ned's claim of a hostile work environment. A claim of race-based harassment requires proof that the plaintiff "(1) belongs to a protected group; (2) was subjected to unwelcome harassment; (3) the harassment complained of was based on race; (4) the harassment complained of affected a term, condition, or privilege of employment; (5) the employer knew or should have known of the harassment in question and failed to take prompt remedial action."[53] Harassment affects a "term, condition, or privilege of employment" if it is "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment."[54] Harassment is sufficiently "severe or pervasive enough" to create a hostile work environment when it is "objectively hostile or abusive"—meaning "an environment that a reasonable person would find hostile or abusive"—and is subjectively perceived by the victim as abusive.[55] The Supreme Court has "emphasized ... that the objective severity of harassment should be judged from the perspective of a reasonable person in the plaintiff's position."[56] The objective inquiry, moreover, requires that the court consider "all the

---

document in Ms. LeBas' personnel file indicates that she ever received a low performer rating or was ever designated as or deemed a low performer by any of her supervisors." *Id*. at ¶ 6. Federal Rule of Civil Procedure 56(c)(4) requires that declarations supporting or opposing summary judgment must be based on personal knowledge. Fed. R. Civ. P. 56(c)(4); *Cutting Underwater Techs. USA, Inc. v. Eni U.S. Operating Co.*, 671 F.3d 512, 515 (5th Cir.2012). A summary judgment declaration need not expressly state that it is based on personal knowledge; but the declaration must show some basis for the declarant's personal knowledge of the facts set forth in the declaration. Fed. R. Civ. P. 56(c)(4); *see also Thomas v. Atmos Energy Corp.*, 223 Fed.Appx. 369, 374 (5th Cir.2007). Here, the record does not show that Ned supervised LeBas or otherwise had knowledge of LeBas' performance reviews or personnel file. Provost's declaration, on the other hand, provides the basis for her personal knowledge of LeBas' performance record. Accordingly, Ned's unsupported statements about LeBas' performance are not sufficient to create a triable issue on whether LeBas was similarly situated as far as being a "poor performer."

[53] *Ramsey v. Henderson*, 286 F.3d 264, 268 (5th Cir. 2002).
[54] *Id*.
[55] *Harris*, 510 U.S. at 21, 114 S.Ct. 367.
[56] *Oncale v. Sundowner Offshore Servs., Inc*., 523 U.S. 75, 81, 118 S.Ct. 998, 140 L.Ed.2d 201 (1998).

circumstances," including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."[57] "[N]o single factor is required."[58]

Ned's Opposition Memorandum does not specifically address her hostile workplace claim or LGHS's argument that the summary judgment record does not support a hostile workplace claim. The summary judgment record includes several written statements by Ned documenting the working conditions at St. Martin Hospital. Ned's written accounts detail a litany of work-place problems, including bullying, insubordination, failure to follow rules and regulations, and misbehavior by her co-workers.[59] But nothing in Ned's accounts reveal *race-based* harassment or conduct that targeted Ned on the basis of race. Complaints about the "ordinary tribulations of the workplace"—even if severe—are not actionable unless they are based on a protected characteristic, such as race.[60]

In her declaration, Ned alleges that Simar and Wyble made comments that targeted her on the basis of race. Specifically, Ned cites Simar's and Wyble's statements during counseling sessions that Ned appeared angry and defensive, that she did not "promote joy" in the workplace because of her leadership style, and that Simar and Wyble criticized Ned's "facial expressions."[61] Moreover, in her Complaint, Ned alleges that she was "labeled as an angry Black woman …."[62] Ned, however, acknowledged in her deposition that neither Wyble nor Simar (nor anyone else at St. Martin Hospital) called or labeled her an "angry Black woman."[63] Given this admission, Wyble and Simar's characterization of Ned as angry and defensive during counseling sessions—and their

---

[57] *Harris*, 510 U.S. at 23, 114 S.Ct. 367.
[58] *Id.*
[59] ECF No. 16-3; 16-4 at 21-28.
[60] *Faragher v. City of Boca Raton*, 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998).
[61] ECF No. 16-5 at ¶ 8.
[62] ECF No. 1 at ¶12.
[63] ECF No. 12-3 at 221.

critique of her leadership style—is racially neutral; there is no other evidence in the summary judgment record showing that Wyble or Simar's actions or comments during these meetings were motivated by race.

Ned, however, suggests that even if Simar and Wyble did not expressly label her an "angry Black woman," their characterization of her and her leadership style was implicitly based on race because they were based on a racial stereotype.[64] Stastements based on racial stereotypes may be evidence that an employer's actions were motivated by race if there is no "benign explanation" for the statements.[65] Here, however, Wyble and Simar characterized Ned as "angry" and "defensive" based on their observations that Ned actually became physically angry and defensive during counseling sessions. Their characterization of her leadership style—for example, that she did not "promote joy"—was based on complaints from Ned's co-workers. Ned points to no other evidence in the record permitting an inference that Wyble and Simar's comments were based on race-based stereotypes.

In sum, the competent evidence in the summary judgment record does not create genuine issues of material fact supporting each of the essential elements of Ned's hostile work environment claim. The Court, therefore, will grant LGHS's Motion for Summary Judgment with respect to Ned's hostile work environment claim.

---

[64] *Id.* at 231-34.
[65] *Jones v. UPS Ground Freight*, 683 F.3d 1283, 1297–98 (11th Cir. 2012) ("'Given the history of racial stereotypes against African–Americans … it is a reasonable—perhaps even an obvious—conclusion that' the use of monkey imagery is intended as a 'racial insult' where no benign explanation for the imagery appears.") (quoting *United States v. Jones*, 159 F.3d 969, 977 (6th Cir.1998)). In *Jones*, the court denied a motion for summary judgment in a Title VII case in light of evidence of conduct based on racial stereotypes where the record reflected no innocent explanation for the conduct. *Id.*

C.  **Title VII Retaliation Claim.**

To establish a prima facie case of retaliation under Title VII, Ned must show that "(1) [she] participated in an activity protected by Title VII; (2) [her] employer took an adverse employment action against [her]; and (3) a causal connection exists between the protected activity and the adverse employment action."[66] If Ned demonstrates a prima facie case of retaliation, "the burden then shifts to the employer to articulate a legitimate, nondiscriminatory or nonretaliatory reason for its employment action. If the employer does so, the burden shifts back to the plaintiff to prove that the proffered reason is pretext for the discriminatory or retaliatory purpose."[67] Ned must rebut "each nondiscriminatory or nonretaliatory reason articulated by the employer."[68]

LGHS contends that Ned has not demonstrated a prima facie case of retaliation because she has not shown that she participated in an activity protected by Title VII. A "protected activity" under Title VII is defined as "opposition to any practice rendered unlawful by Title VII, including making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII."[69] Title VII thus covers two distinct types of protected activity: (1) opposition to any practice rendered unlawful by Title VII (the "opposition clause"), and (2) making a charge, testifying, assisting, or participating in any investigation, proceeding, or hearing under Title VII (the "participation clause").[70]

There is no summary judgment evidence showing that Ned participated in an internal investigation or federal or state proceeding involving her claims of discrimination prior to her demotion. Accordingly, her retaliation claim must be based on her "opposition" to a practice made

---

[66] *Newbury*, 991 F.3d at 678 (citing *McCoy v. City of Shreveport*, 492 F.3d 551, 556–57 (5th Cir. 2007)).
[67] *Id.* (citation omitted).
[68] *Id.*
[69] *Williams v. Recovery Sch. Dist.*, 859 F. Supp. 2d 824, 830–31 (E.D. La. 2012) (citing *Ackel v. Nat'l Commc'ns, Inc.*, 339 F.3d 376, 385 (5th Cir. 2003)).
[70] *Crawford v. Metro. Gov't of Nashville & Davidson Cty., Tenn.*, 555 U.S. 271, 274 (2009).

unlawful by Title VII. LGHS argues that there is no evidence in the summary judgment record that Ned made any complaints about harassment or discrimination on the basis of race. Ned's opposition to the motion for summary judgment points to a July 17, 2019 e-mail in which Wyble acknowledges receiving a memorandum from Ned detailing her complaints against Simar.[71] Ned also points to an e-mail on the same day in which Ned reiterated her complaints against Simar.[72] However, neither the memorandum nor the e-mail cited in Ned's opposition make any reference to harassment or discrimination on the basis of race. They instead refer to a litany of generic workplace complaints, such as "colleague abandonment, insubordination, employee workplace misconduct, employee workplace safety violations, employee and managerial harassment and bullying."[73]

In her declaration, however, Ned states that she contacted Kia Butler on March 12, 2019 and reported Simar "as harassing and targeting me *due to my race*."[74] Butler denies that Ned ever complained of racial discrimination or harassment, and LGHS argues that Ned's sworn statement cannot create a genuine issue of material fact because it is allegedly self-serving and uncorroborated.[75] The Court disagrees. Ned's sworn statement is an affirmative statement of what she claims she told Butler in March 2019—that Simar's conduct was motivated by racial animus. The credibility and weight of Ned's testimony versus Butler's account of the conversation is a question for the trier of fact. Ned's sworn statement is sufficient to create a genuine question of material fact that Ned complained of—and, hence "opposed"—discrimination and harassment on the basis of race.

---

[71] ECF No. 16 at 7.
[72] *Id*.
[73] ECF No. 16-5 at ¶9.
[74] ECF No. 16-5 at ¶6 (emphasis added).
[75] ECF No. 19-2.

However, evidence that the plaintiff opposed the defendant's conduct, standing alone, does not satisfy the opposition clause. Rather, the clause "requires opposition *of a practice made unlawful by Title VII*."[76] While Ned has not met her initial burden of showing a prima facie case of discrimination or harassment on the basis of race, as *Payne* makes clear, the standard is not whether the plaintiff can successfully state and support a Title VII claim, but whether the plaintiff "*reasonably believes* the employment practice to be unlawful."[77] This "reasonable belief" standard acknowledges that there is "some zone of conduct that falls short of an actual violation but could be reasonably perceived to violate Title VII." *Id.* at 241. In other words, the fact that Ned has not demonstrated a triable issue on all the essential elements of her disparate treatment and hostile work environment claims does not preclude a finding that she had a reasonable belief that Simar and Wyble's actions violated Title VII. Whether Ned held such a reasonable belief turns on the nature of the conduct alleged to violate Title VII and the context in which Ned opposed this conduct.[78]

Here, Ned focuses on statements by Simar and Wyble characterizing her as "angry" and not "promoting joy," as well as their comments criticizing Ned's facial gestures.[79] These comments, standing alone, are neutral and do not contain any language that would suggest racial bias or animus, especially when those statements are placed in context. Specifically, Simar and Wyble had received complaints about confrontations between Ned and her co-workers. Wyble and Simar also observed that Ned reacted angrily and defensively to their attempts to counsel her on her leadership style and contend that, at one point Ned angrily pointed her finger at Wyble.[80] Ned

---

[76] *E.E.O.C. v. Rite Way Serv., Inc.*, 819 F.3d 235, 240 (5th Cir. 2016) (emphasis in original).
[77] *Id.* (citing *Payne*, 654 F.2d at 1137) (emphasis added).
[78] *Taliaferro v. Lone Star Implementation & Elec. Corp.*, 693 F. App'x 307, 310–12 (5th Cir. 2017) (citing *Rite Way*, 819 F.3d at 242).
[79] ECF No. 16-5 at ¶ 8.
[80] ECF No. 12-3 at 20.

cites no other statement by Simar or Wyble indicating that they were targeting her on the basis of race.[81]

Moreover, the contemporaneous written statements and e-mails prepared by Ned from March through July 2019 do not characterize Simar or Wyble's conduct as racially motivated. Specifically, a July 17, 2019 memorandum written by Ned and forwarded to Wyble, Simar, Butler, and LGHS's Human Resources Department recounts in detail workplace problems at St. Martin Hospital, including employee misbehavior, repeated failures to follow hospital policy, instances of "cliques" and "bullying" among the staff, and employee insubordination.[82] The memorandum also recounts Wyble and Simar's comments during their meetings from February through July 2019, and expresses frustration about a lack of support.[83] But nothing in Ned's lengthy account mentions racial bias or animus, or that she believed that she was a victim of racial discrimination as opposed to generic workplace complaints. Similarly, Ned sent an email to Wyble and others in July 2019 that appears to contain a shorter version of the same narrative in Ned's longer memorandum.[84] Again, Ned makes no mention of harassment or discrimination on the basis of race. Finally, Ned wrote a memorandum dated February 12, 2020—approximately two weeks before she filed her federal complaint—identifying three employees at St. Martin Hospital that Ned contends had performance problems but, unlike her, were not demoted or terminated. Even this document, however, does not allege racially biased conduct but, instead, recounts allegations that her co-workers engaged in bullying and harassment, or were poor performers.[85] In sum, Ned has not pointed to evidence in the summary judgment record supporting a reasonable belief that

---

[81] In her complaint, Ned alleges that Simar or Wyble labeled her as a "angry Black woman." ECF No. 1 at ¶ 12. As explained previously, there is no competent summary judgment evidence supporting this allegation and Ned has admitted that no one at LGHS characterized her (or otherwise labeled her) as "an angry Black woman."
[82] ECF No. 16-3 at 4-10.
[83] *Id*. at 5-6.
[84] ECF No. 16-4 at 22-24.
[85] *Id*.

15

she had been subjected to race discrimination in violation of Title VII at the time she complained to Wyble, Simar, and Butler.

Ned cites two other factors supporting a reasonable belief that she was subjected to discrimination and harassment on the basis of race. First, she cites her positive year-end 2018 performance review and Simar's January 29, 2019 note commending her on her leadership and performance.[86] Ned points to this evidence and argues that her performance and leadership had never been questioned prior to her counseling sessions with Simar and Wyble from February through July 2019. She suggests that this rapid change in Simar's and Wyble's view of her performance supports her belief that she was demoted because of racial bias or animus. The Court disagrees. Ned's counseling sessions began in February 2019—after her prior-year performance review and Simar's commendation—and were spurred by complaints from co-workers and conflicts between her and her co-workers. Ned's performance problems, according to Wyble and Simar, resulted, in part, from her negative response to their attempts to counsel her.[87] Again, nothing in Ned's contemporaneous statements or the summary judgment record—apart from the declaration Ned submitted opposing summary judgment—indicates her belief that LGHS's actions were motivated by racial bias or animus. Accordingly, when her performance reviews are viewed in context, LGHS's actions after January 2019 do not permit an inference of racial bias or animus even considering that Ned had previously received positive performance reviews.

Second, Ned relies on her allegation that Rebecca LeBas was not demoted or otherwise disciplined for poor performance. As with Ned's race-based disparate treatment claim, however, there is no competent summary judgment evidence showing that LeBas is an appropriate

---

[86] ECF No. 16-4 at 1-5; 16-3. The summary judgement record includes a copy of Ned's performance review dated May 7, 2020. ECF No. 16-4 at 6-13. This review, however, is dated after Ned's demotion and after she filed the present Title VII action.
[87] ECF No. 12-3 at 4-9.

"comparator." Nothing in the summary judgment record shows that LeBas' alleged performance problems were comparable to the performance and leadership issues cited by Simar and Wyble with respect to Ned. To the extent that Ned argues that LGHS' treatment of LeBas supports a reasonable belief that she was subjected to discrimination or harassment on the basis of race, the record does not create a triable issue. Ned's written accounts of her treatment in March and July 2019 make no mention of LeBas receiving differential treatment, or that LGHS's treatment of LeBas reflected discrimination or harassment on the basis of race. Indeed, the first instance where Ned cites LGHS's differing treatment of LeBas appears to be the February 12, 2020 memorandum prepared shortly before filing her Title VII complaint—over a year *after* she allegedly complained to Kia Butler.[88] Even in that document, Ned does not identify race as a factor in her treatment.[89]

In sum, the summary judgment record does not support Ned's assertion that she had a reasonable belief that LGHS's actions violated Title VII. Accordingly, the Court will grant LGHS's Motion for Summary Judgment with respect to Ned's claim of retaliation under Title VII.

## IV.
### MOTION FOR LEAVE TO FILE SUR-REPLY

Ned also filed a Motion for Leave to File Sur-Reply to the Motion for Summary Judgment[90] Sur-replies are disfavored and leave to file a sur-reply will be granted only upon a showing of good cause. In her motion, Ned states only that a sur-reply would "be helpful to the Court in deciding the issues in this matter," and that the sur-reply "will address arguments raised in Defendant's reply brief…."[91] This does not state good cause to allow a sur-reply. The motion does not state why the summary judgment motion has not adequately been briefed with the current filings or why

---

[88] ECF No. 16-1.
[89] *Id*.
[90] ECF No. 21.
[91] *Id*.

17

the arguments in the reply brief create good cause for a sur-reply. Nor does the motion include a copy of the proposed sur-reply. Accordingly, the Court will deny the Motion for Leave to File a Sur-reply.[92]

## V.
### CONCLUSION

For the foregoing reasons, the Court GRANTS LGHS's Motion for Summary Judgment [ECF No. 12], and Ned's claims against LGHS under Title VII are DISMISSED WITH PREJUDICE; the Court DENIES Ned's Motion for Leave to File a Sur-reply [ECF No. 21].

THUS DONE in Chambers on this 20th day of January, 2022.

ROBERT R. SUMMERHAYS
UNITED STATES DISTRICT JUDGE

---

[92] ECF No. 21.